IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO.
EASTERN DIVISION

FELIX SARDISCO                          )    CASE NO: 1:13 CV 2701
13121 Kirton Ave.                       )
Cleveland, OH 44135                     )    JUDGE: PATRICIA A. GAUGHAN
                                        )
GUANG Q. CHEN                           )
7171 Som Center Rd.                     )
Solon, OH 44139                         )
                                        )
on behalf of themselves and             )
all others similarly situated,          )
                                        )
        Plaintiffs,                     )
vs.                                     )
                                        )
DIRECT IMPORT HOME DÉCOR, INC./         )
CABINETS & GRANITE DIRECT               )    **PLAINTIFFS' COLLECTIVE**
4979 West 130th St.                     )    **ACTION FIRST AMENDED**
Cleveland, OH 44135                     )    **COMPLAINT**
                                        )
EDDIE J. NI                             )
3403 East Galloway Dr.                  )
Richfield, OH 44286                     )
                                        )    DEMAND FOR JURY TRIAL
LING LING AUYEUNG NI                    )
3403 East Galloway Dr.                  )
Richfield, OH 44286                     )
                                        )
ERIC CHEUNG                             )
4979 West 130th St.                     )
Cleveland, OH 44135                     )
                                        )
FANNIE CHEN                             )
4979 West 130th St.                     )
Cleveland, OH 44135                     )
                                        )
        AND                             )
                                        )
CHENG LONG HUANG                        )
4979 West 130th St.                     )
Cleveland, OH 44135                     )
                                        )
        Defendants.                     )

1

Now come Plaintiffs, Felix Sardisco ("Plaintiff Sardisco") and Guang Q. Chen ("Plaintiff Chen"), by and through counsel, and, pursuant to Fed. Civ. R. 15(a)(1)(A), for an Amended Complaint against Defendants Direct Import Home Décor, also operate under a name of Cabinets & Granite Direct ("Defendant Company"), Eddie J. Ni ("Defendant Eddie Ni"), Ling Ling Auyeung Li ("Defendant Ling Ling Ni"), Eric Cheung ("Defendant Cheung"), Fannie Chen ("Defendant Chen") (together "Defendant Owners") and Cheng Long Huang ("Defendant Huang"), state the following:

<u>NATURE OF THE ACTION</u>

1. Plaintiffs file this lawsuit as a "collective action" under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219.

2. Plaintiffs and other similarly-situated employees worked for Defendant Company as home construction workers and installers. In violation of the FLSA, Defendant Company willfully and intentionally refused to pay Plaintiffs and other similarly-situated workers minimum wage, and likewise refused to pay Plaintiffs and other similarly-situated workers overtime compensation for the hours they worked over 40 in a workweek. Defendant Company also violated the recordkeeping requirements of the FLSA, paid Plaintiffs and other workers in cash, therefore evaded the federal and local taxes.

3. Plaintiffs allege, on behalf of themselves and other similarly situated employees, pursuant to FLSA, 29 U.S.C. §§ 216(b), that they are entitled to: (i) unpaid minimum wages from Defendant Company for hours they worked in which they were not paid the minimum wage; (ii) unpaid wages from Defendant Company for overtime work for which they did

not receive overtime premium pay as required by FLSA; and (iii) liquidated damages pursuant to the FLSA, 29 U.S.C. § 201 *et seq.*

4. Plaintiff Sardisco also alleges other causes of actions under state law for himself in his individual capacity.

5. The following allegations are based upon personal knowledge of the Plaintiffs as well as on information and belief.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over Plaintiffs' claims under the FLSA pursuant to 28 U.S.C. §1331 and 29 U.S.C. §216(b).

7. This Court has supplemental jurisdiction over Plaintiff Sardisco's state law claims under 28 U.S.C. § 1367 because these claims are so closely related to Plaintiff Sardisco's claims under the federal FLSA that they form part of the same case or controversy.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because Defendants conduct business throughout this District and Division and because a substantial part of the events or omissions giving rise to the claims occurred in this District and Division.

## PARTIES

9. At all times relevant herein, Plaintiff Felix Sardisco was a United States citizen and an individual who resided at 13121 Kirton Ave., Cleveland, Ohio.

10. At all times relevant herein, Plaintiff Guang Q. Chen ("Plaintiff Chen") was a legal resident and resided at 7171 Som Center Road, Solon, Ohio.

11. At all times relevant herein, Plaintiffs were employees engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 206-207.

12. At all times relevant herein, Plaintiffs were employees entitled to the full protections of the FLSA. 29 U.S.C. § 203.

13. Upon information and belief, at all times relevant herein, Defendant Direct Import Home Décor, Inc. ("Defendant Company") was a corporation formed and existing under the laws of the State of Ohio, engaging in the importing and home décor business, and whose address was 4979 West 130th Street, Cleveland, OH 44135.

14. Upon information and belief, Defendant Owners currently conduct the same business under a name of Cabinet & Granite Direct at the same location of 4978 West 130th Street, Cleveland, OH 44135. Therefore, Cabinet & Granite Direct is also liable for the acts and omissions of Direct Import Home Décor, as alleged herein. "Defendant Company," as referred to within this complaint, includes Direct Import Home Décor, Inc., Cabinet & Granite Direct, and any other future company owned and managed by the Defendants, engaging in the same business at 4978 West 130th Street, Cleveland, OH 44135.

15. Upon information and belief, at all times relevant herein, Defendant Eddie J. Ni was an owner and President of Defendant Direct Import and its statutory agent, whose address was 3403 East Galloway Drive, Richfield, OH 44286.

16. Upon information and belief, at all times relevant herein, Defendant Ling Ling Auyeung Ni was the wife of Defendant Eddie Ni and an owner, principal, manager, and/or executive officer of Defendant Direct Import whose address was 3403 East Galloway Drive, Richfield, OH 44286.

17. Upon information and belief, at all times relevant herein, Defendant Ling Ling Ni controlled the bookkeeping and wage practice, and distributed cash and paychecks to workers of Defendant Company.

18. Upon information and belief, at all times relevant herein, Defendant Eric Cheung was an owner and the Vice President of Defendant Direct Import, whose address was 4979 West 130th Street, Cleveland, OH 44135.

19. Upon information and belief, at all times relevant herein, Defendant Fannie Chen was the wife of Defendant Eric Cheung, and a General Manager of Defendant Direct Import, whose address was 4979 West 130th Street, Cleveland, OH 44135.

20. Plaintiff Sardisco discussed the promised wage with Defendant Fannie Chen. Moreover, he reported all his injuries to Defendant Fannie Chen. Furthermore, Plaintiff Sardisco reported workplace assaults, beatings and sexual harassments to Defendant Fannie Chen. Finally, Plaintiff Sardisco requested legal wage and overtime compensation from Defendant Company and Defendant Fannie Chen.

21. Defendant Eddie Ni, Defendant Ling Ling Ni, Defendant Eric Cheung and Defendant Fannie Chen are collectively referred to as Defendant Owners hereunder.

22. At all times relevant herein, Defendant Company and Defendant Owners were employers covered by the FLSA. 29 U.S.C. § 203.

23. Upon information and belief, at all times relevant herein, Defendant Huang was and still is a full-time employee of Defendants Company and Defendant Owners.

24. Upon information and belief, Defendant Huang was an individual who resided at 13121 Kirton Ave., Cleveland, Ohio.

GENERAL FACTUAL ALLEGATIONS

25. Defendant Company is a large importer of granite, cabinets, and other home furnishings, and is also engaged in home remodeling and installation. Defendant Company is owned

by Defendant Eddie Ni, Defendant Eric Cheung and two other owners (also relatives of Ni and Cheung).[1]

26. In operating their business, Defendants Owners regularly hire installers and general laborers as employees to work at Defendant Company to perform such tasks as maintaining the showroom, loading the granite, cabinets and other inventory in the warehouses and trucks, delivering and installing the cabinets and/or granite products for customers.

27. When delivering, employees are responsible for loading, transporting, assembling, and installing in both business and consumer homes these cabinets and/or granite products.

28. Employees would go on many installations each day.

29. The workday for installers and other workers often started as early as 8:30am and would continue until after 6:30 pm, with many workdays not ending until after 10 pm.

30. The installers' work is integral and indispensable to Defendant Company's cabinet and granite business.

31. Plaintiffs and other similarly-situated workers were employed by Defendants Company and Owners in full-time and permanent positions.

32. The installers followed Defendants' specific work rules and regulations and obeyed the work hours required by Defendant Company and Defendant Owners.

33. Pursuant to Defendant Company and Defendant Owners' common business practices, installers regularly worked over forty hours per workweek, without receiving the statutory minimum wage, nor the one-and-one-half overtime premium required by the FLSA.

---

[1] Defendant Company has other branches in Ohio and a branch in Chicago. Defendant Owners also have related companies in China (for production of granite and cabinets) and Canada (for sales of Chinese granite and cabinets).

34. Defendant Company and Defendant Owners were able to continue these practices because of the character of the pool of workers they selected. Many installers and laborers did not speak much English, and many of them did not have legal immigration status to work or live in the United States.

35. Defendant Company and Defendant Owners housed many of these workers and closely controlled these workers' day-to-day activities and other aspects of their lives.

36. Many workers, including Plaintiffs, were paid below minimum wage and/or did not receive any overtime compensation.

<u>COLLECTIVE ACTION ALLEGATIONS</u>

37. Plaintiffs bring this lawsuit pursuant to 29 U.S.C. §216(b) as a collective action on behalf of all former or current persons who work or worked full time at Defendant Company ("Class Members" or "Class") at any time within three years prior to the filing of this action through the date of the final disposition of this action ("Class Period").

38. In addition to Plaintiffs, numerous current and former employees are similarly situated with regard to their claims for unpaid wages and damages. Plaintiffs are representative of these employees and are acting on behalf of their interests as well as their own in bringing this action.

39. Plaintiffs are unable to state at this time the exact size of the potential class, but upon information and belief, aver that it consists of thirty or more persons.

40. Plaintiffs and the above-defined class of workers are similarly situated, as defined in 29 U.S.C. § 216(b), because Class Members worked for the same Defendant Company and Owners and worked pursuant to Defendant Owners' established business practices, and

as a result of such practice, were not paid the legally mandated minimum wage nor overtime wage under FLSA.

41. This action is maintainable as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) as to claims for unpaid wages, overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA.

42. These similarly-situated employees are known to Defendant Company and Defendant Owners and are readily identifiable by Defendants since they are Defendant Company's employees. These individuals may readily be notified of this action, and allowed to opt in pursuant to 29 U.S.C. §216(b), for the purpose of collectively adjudicating their claims for unpaid wages, overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA.

43. Written consents to join this action as to Counts One and Two, as and when executed by other individual plaintiffs, will be filed pursuant to 29 U.S.C. § 216(b).

## FACTUAL ALLEGATIONS PERTAINING TO PLAINTIFF SARDISCO

### Plaintiff Sardisco's Inducement Into Employment

44. Plaintiff Sardisco was hired in or around November 2011.

45. Plaintiff Sardisco had previously worked in Chicago as a skilled laborer. He was then offered a job in Cleveland working for Defendant Company by Defendant Company's Chicago branch.

46. Plaintiff Sardisco accepted employment with Defendant Company for an oral promise of working 40 hours per week in exchange for payment of $1,400/month.

47. Defendant Company also promised to provide Plaintiff Sardisco with free housing accommodations and future wage increases.

48. In reliance on these promises, Plaintiff Sardisco moved from Chicago to Cleveland, foregoing other job opportunities there.

49. At the time of these negotiations, Defendant Company had no intention of ever paying Plaintiff Sardisco $1,400/month for a 40 hour workweek, and indeed willfully failed to pay Plaintiff Sardisco $1,400 per month until September 2012. Nor did Plaintiff Sardisco receive free housing as he had been promised. Moreover, Plaintiff Sardisco continually worked greater than 40 hours a week per Defendants instruction without any overtime compensation, and in direct contravention of Defendants' earlier promises.

### Plaintiff Sardisco's FLSA Allegations

50. **2011**. Plaintiff Sardisco was first hired as a skilled laborer to maintain the showroom and warehouse, load/unload cabinets and granite, stock the stones, cut the wood, and perform other tasks. However, because of his productivity and skills, he was gradually given more and more responsibilities (without any commensurate increase in pay), and eventually worked on the more complex aspects of cabinet and granite installation, including installation of the tiles, cabinets, and countertops, as well as sanding and finishing the counters and cabinets. Plaintiff Sardisco also acted as a translator and go-between for the other installers and customers, because most of the foremen of Defendant Company did not speak any English.

51. Throughout his employment, Plaintiff Sardisco regularly worked through lunch and never received any pay for those additional hours worked.

52. Defendants Company and Owners had no intention of paying Plaintiff Sardisco a sum of $1,400/month from the time of the contract and, indeed, never did so throughout 2011 and the most 2012.

53. Plaintiff Sardisco did not receive $1,400/month, as agreed. Instead, Plaintiff Sardisco only received cash payments approximately bi-weekly of around $500 in 2011. Defendants Company and Owners, however, promised to increase Plaintiff Sardisco's pay in the near future.

54. Throughout 2011, Plaintiff Sardisco regularly worked six (6) to seven (7) days a week and worked in excess of 60 hours per week, many weeks putting in as many as 80 hours.

55. Plaintiff Sardisco was never paid $1,400/month until September 2012, when he was paid $591.13 for the period from September 3, 2012-September 16, 2012, and paid $834.09 for the period from September 17, 2012-September 30, 2012.

56. Throughout 2011, Defendants Company and Owners never paid Plaintiff Sardisco any overtime compensation.

57. Defendants Company and Owners only paid Plaintiff Sardisco **in cash** throughout 2011.

58. Defendants Company and Owners paid many of their employees' wages in cash to avoid federal and state tax and related obligations.

59. Defendants Company and Owners failed to record the hours worked and wages paid to many of his employees, particularly those (like Plaintiff Sardisco) who were paid only in cash.

60. **2012.** Defendants Company and Owners began paying Plaintiff Sardisco via check for the pay period starting February 6, 2012. *See Ex. A- Plaintiff Sardisco's 2012 Checks.*

However, they never listed the number of hours that Plaintiff Sardisco worked on their checks to him.

61. Throughout 2012, Plaintiff Sardisco regularly worked six (6) to seven (7) days a week and worked in excess of 60 hours per week, and on many occasions, up to 80 hours per week.

62. In 2012, despite having worked full time for Defendant Company for an entire year, many weeks for 80 hours or more, Plaintiff Sardisco only earned $13,162.12. *See Ex. B- Plaintiff Sardisco's 2012 W-2.* Plaintiff Sardisco never received any overtime payment as mandated by FLSA.

63. Defendants Company and Owners knowingly and willfully failed to pay Plaintiff Sardisco minimum wage and overtime wages from November 2011 until April 2013.

64. **2013**. Defendants Company and Owners did not begin to include the number of hours worked, or the rate of pay, on Plaintiff Sardisco's checks until April 1, 2013. *See Ex. C- Plaintiff Sardisco's 2013 Checks.* At that time, Plaintiff Sardisco received $10/hour, and $15/hour overtime. Plaintiff Sardisco was also instructed to work only four days a week to reduce Defendants' overtime obligations.

65. Defendants Company and Owners also laid off most of their undocumented workers in 2013.

66. Defendants Company and Owners also started to charge Plaintiff Sardisco rent despite the promise that he would be provided with free housing accommodations. If Plaintiff Sardisco refused or delayed to pay the rent, Defendant Ling Ling Ni and/or Fannie Chen would withhold Plaintiff Sardisco's paycheck, so Plaintiff Sardisco had no choice but to

start paying the rent of $250 to $300 to Defendant Owners.[2] Plaintiff Sardisco was not required to pay any rent before April 2013.

67. Before this, Plaintiff Sardisco's rate of pay or his number of hours worked had been intentionally excluded from his pay checks, so as to help Defendants Company and Owners's avoidance of wage reporting and tax evasion.

68. Upon information and belief, this change in wage practices came about as a direct result of another pending FLSA lawsuit in this Court, *Chen v. Yellow Tail, et al.*, No.: 5:12-CV-1588. In that case, Defendant Ling Ling Auyeung Ni, also an owner of a Chinese restaurant in Fairlawn, OH, engaged in the same unlawful practices by paying employees in cash so as to evade federal and local taxes, paying below minimum wage, refusing to pay any overtime compensation, and hiring undocumented workers for kitchen work.

69. On October 15, 2013, Plaintiff Sardisco was laid off because he allegedly left a vacuum cleaner at the home of a customer. Upon information and belief, the vacuum cleaner was valued at only $35.00.

70. Upon his termination, Defendants Eddie Ni and Fannie Chen attempted to make Plaintiff Sardisco sign a "Separation Agreement and Mutual Release of Claims" in which Defendant Company agreed to pay Plaintiff Sardisco $500, in exchange for his agreement not to bring any claims against Defendant Company. *See Ex. D- Separation Agreement.* Plaintiff Sardisco refused to sign the agreement.

71. Defendants Owners neither distinguished themselves from Defendant Company, nor treated Defendant Company as a separate entity. They represented to Plaintiff Sardisco that they were Defendant Company. Each owner spoke as if he/she were the Defendant

---

[2] Defendant Owners housed at least six or more employees in a small two bedroom house at 13121 Kirton Ave., Cleveland, OH. The living condition was terrible. (e.g. the living room and attic were converted into bedrooms; the house was infected by bedbugs, mold, and mice.)

Company.  Moreover, Defendant Owners paid Plaintiff Sardisco and other workers cash from their own pockets.

### Fraud Related to Plaintiff Sardisco's Injuries

72. During his employment, Plaintiff Sardisco suffered numerous painful and debilitating injuries.

73. In or around January 2012, approximately three months after working for Defendant Company, Plaintiff Sardisco's right thumb was badly injured in a workplace accident by a saw while cutting granite.  Plaintiff Sardisco's thumb was so severely mangled that bone was showing and blood was spurting.  The foreman, Mr. Chen, immediately called management.

74. Outrageously, Defendant Owners told Plaintiff Sardisco that Plaintiff Sardisco would not be covered for medical expenses if he went to the hospital and had the thumb treated, because they stated that Defendant Company did not have insurance.

75. Upon information and belief, Defendant Company did, in fact, have coverage, and were required by law to maintain coverage as Ohio employers under Worker's Compensation laws.

76. However, because Defendant Company were paying Plaintiff Sardisco in cash, and had not registered Plaintiff Sardisco as their employee with the federal and state authorities, they did not want Plaintiff Sardisco to file a claim, because then their lack of reporting of Plaintiff Sardisco's position would subject them to liability and possible charges from federal and state authorities.

77. This was a serious false representation made to Plaintiff Sardisco.  Plaintiff Sardisco relied on Defendant Eddie Ni's misrepresentations. As a result he did not seek out

medical attention for this injury because he could not afford the hospital treatment. Plaintiff Sardisco's sub-minimum wage could only barely provide him with the most basic needs.[3]

78. As a result of the lack of medical attention, Plaintiff Sardisco had to bandage his thumb himself. Because of the lack of medical treatment, every day he had to unwrap the bandages and put on antiseptic ointment, and endured excruciating pain. Many times the tears just busted out his eyes and his whole body was shaking by the pain. The healing process for Plaintiff Sardisco's thumb was so long and so painful that it left a permanent mark on his mental state.

79. As a result, Plaintiff Sardisco now suffers from chronic pain and a reduced range of motion of the thumb, as well as arthritis which only increases in severity with age.

80. Plaintiff Sardisco has also suffered other serious injuries in the workplace during the past three years, such as a cut on his index finger by saw, a hand injury by a large piece of granite, a leg injury by a large piece of granite, a tailbone injury, a back injury, etc. These injuries were a direct result of the long hours and unsafe work environment Defendant Company had created for its employees.

81. Such injuries have also damaged Plaintiff Sardisco's future job prospects, since he works in a labor-intensive field, which requires a full range of motion and the effective use of his limbs and back.

82. As a result of the numerous chronic and debilitating injuries, pain, and corresponding decrease in abilities, Plaintiff Sardisco has suffered depression and other mental anguish.

83. Defendant Company and Defendant Owners continually and intentionally put profit above all else in their business, including the safety and livelihood of their workers and

---

[3] Plaintiff Sardisco had also tried to save every penny to support his sixteen year old daughter.

the applicable laws. As a result, Plaintiff Sardisco and other workers have suffered unwarranted loss and injury.

**Hostile Workplace Environment and Physical Abuse by Foreman Huang**

84. Plaintiff Sardisco began working for Defendants in 2011. In 2012, he began to take on more responsibilities within Defendant Company and was subsequently sent out on projects for the installation of cabinets/granite/etc.

85. Defendant Cheng Long Huang was the foreman of Plaintiff Sardisco's crew on most occasions, and directed Plaintiff Sardisco's activity.

86. Defendant Huang frequently assaulted Plaintiff Sardisco, including punching him, shoving him, physically grabbing Plaintiff Sardisco's private parts, and pushing him around, and he also verbally abused Plaintiff Sardisco.

87. Defendants Company and Owners knew that Defendant Huang had a propensity for violence and/or tortious conduct. Defendant Huang had a known reputation and propensity for violence.

88. Plaintiff Sardisco was repeatedly subjected to this painful and abusive behavior by Defendant Huang throughout 2012 and in 2013.

89. Plaintiff Sardisco complained to Defendant Fannie Chen and Defendant Eric Cheung about Huang's abuse in 2012, but Defendant Company and Defendant Owners ignored his complaints and forced him to continue working for Defendant Huang on a regular basis. Defendant Eric Cheung, upon hearing Plaintiff Sardisco's complaint on Huang's sexual assault, told Plaintiff Sardisco that "Huang is not a gay," and "we are not going to fire him because of this."

90. In 2013, certain customers of Defendant Company, upon witnessing the physical abuse and violence heaped on Plaintiff Sardisco by Defendant Huang during installations, called and emailed Defendant Company to voice their concerns.

91. After the customers' calls and complaints, Defendant Eddie Ni sent Plaintiff Sardisco a letter on July 3, 2013, claiming that Defendant Company had not been informed of the abuse, and would 'warn' Defendant Huang. *See Ex. E- Letter Regarding Cheng Long Huang.*

92. Upon information and belief, Defendant Huang was not penalized in any way nor terminated. Defendant Huang continued to work as a foreman and lead installer for Defendant Company, with his bad behavior unabated.

93. Defendant Huang did not cease to assault Plaintiff Sardisco, and the pattern of violence continued following the letter.

94. As a result of Defendant Company's actions and inaction, negligence, failure to provide a safe working environment, and Chen Long Huang's repeated beatings, Plaintiff Sardisco has suffered severe physical and emotional distress. If Plaintiff Sardisco was injured, he was afraid to seek any medical attention.

95. Defendant Huang was, at all times throughout 2012 and 2013, an employee of Defendants Company and Defendant Owners.

96. Defendant Huang was also acting in the scope of his employment when he committed the acts which caused Plaintiff Sardisco's injuries: such behavior was when both Plaintiff Sardisco and Defendant Huang were "on the clock," and in the midst of performing their job duties.

97. As Plaintiff Sardisco's foreman, Defendant Huang was in a position of authority over Plaintiff Sardisco at all relevant times.

98. In addition to workplace violence, the house that Plaintiff Sardisco shared with five other workers was also infested with violence. Plaintiff Sardisco lived in the attic. At one time, the upstairs bathtub was clogged and resulted in water overflow to the downstairs. The worker who lived downstairs, nicknamed Short Chen ("Short Chen") became angry and kicked open Plaintiff Sardisco's door and started yelling and beating Plaintiff Sardisco. He threatened to kill Plaintiff Sardisco. Plaintiff Sardisco called Defendant Fannie Chen, the General Manager, for help. In the next day Defendant Eddie Ni and Eric Cheung showed up at the house. They later fixed the drainage and downstairs ceilings, but never addressed the violence towards Plaintiff Sardisco by Short Chen.

### Defendants Company and Defendant Owners' Obstruction of Justice

99. In 2012, Plaintiff Sardisco and other workers were informed by Defendant Eddie Ni of the pending *Chen v. Yellow Tail* case, though they did not receive details.

100. Plaintiff Sardisco was called into Defendant Eddie Ni's offices and questioned about his involvement and/or his co-workers' involvement in that case, if any, and then warned not to get involved in any way in that case.

101. In 2013, Plaintiff Sardisco was sent out for an installation with a foreman named Zhongxi Chen. During this installation, the foreman Chen harassed the female customer inside her own home, by grabbing her and kissing her with force. Plaintiff Sardisco witnessed this incident.

102.     Upon information and belief, the customer later pressed charges against Chen and Chen was arrested by the Akron Police.[4]  A police officer also contacted Plaintiff Sardisco for questions at Police Station.  Thereafter Defendant Eric Cheung, told Plaintiff Sardisco to "ignore the Police."  Upon Plaintiff Sardisco's repeated requests for permission to speak to the officer, Eric Cheung shouted at Plaintiff Sardisco to "shut up" and that "he would deal with the police."  Thereafter the police officer stopped calling Plaintiff Sardisco.

103.     Later Defendant Eddie Ni and Eric Cheung called Plaintiff Sardisco into Eddie Ni's office and instructed Plaintiff Sardisco to deny everything in a meeting to be held later.

104.     Therefore in the meeting with a private investigator and an attorney, with Defendant Ni attending the same meeting with Plaintiff Sardisco, Plaintiff Sardisco did not disclose that he witnessed the harassment by Chen on the customer.  Plaintiff Sardisco felt that he could not speak openly or honestly, despite him wanting justice. Moreover, Plaintiff Sardisco did not want to be fired, or to be beaten by his foreman, or suffer any additional bodily harm.

105.     In a Chinese newspaper article, Defendant Ni proclaimed that he came to the United States with empty hands but was set to reap great bounties in this land of opportunities.  He further claimed that he feared nothing and nobody and that in his early restaurant businesses he carried guns to deter any opposition.

---

[4] Plaintiff Sardisco is not one hundred percent certain as to which Police Station arrested Zhongxi Chen and contacted Plaintiff Sardisco, but such information can be easily obtained through Defendant Company.

106.     Upon information and belief, Defendant Ni came to the United States first as an

undocumented immigrant. Since then he has exploited the labor of other illegal

immigrants to further his own gains.

107.     Upon information and belief, Defendant Ling Ling Ni lost one of her eyes in a

battle with one of their business opponents.[5]

FACTUAL ALLEGATIONS PERTAINING TO PLAINTIFF GUANG Q. CHEN

108.     Plaintiff Chen worked as a laborer and installer for Defendants Company and

Owners from April 2008 to May 2012.  During the years Plaintiff Chen worked for the

Defendants, Defendants Company and Owners never paid Plaintiff Chen or other

similarly-situated employees any overtime compensation, in violation of FSLA, despite

the fact that Plaintiff Chen worked every day for ten hours a day and six days a week.

Moreover, Plaintiff Chen worked on most U.S. holidays but did not receive any overtime

pay.

109.     Plaintiff Chen's detailed wage allegations are included in his affidavit. *See Ex. F
– Plaintiff Chen's Affidavit, Ex. G – Plaintiff Chen's Paystubs of 2009, Ex. H – Plaintiff
Chen's Paystubs of 2010, Ex. I – Plaintiff Chen's Paystubs of 2011, Ex. J - Plaintiff
Chen's Paystubs of 2012, Ex. K – Plaintiff Chen's W2*.


COUNT ONE: WAGE VIOLATIONS OF THE FLSA

(For Plaintiffs and Class Members)

---

[5] Plaintiffs' counsel is concerned about her own safety by filing this complaint.  Counsel also represented the
Plaintiff Ms. Chen in *Chen v. Yellow Tail, et al.,* No.: 5:12-CV-1588.  During the first hearing, Defendant Eddie Ni
cursed Plaintiff's counsel in open court.  Therefore the Honorable Judge John Adam banned Eddie Ni from his
courtroom.  Since the filing of that case, counsel was approached by several undocumented Mexican immigrants
who worked for Defendant Eddie Ni and Direct Import prior to 2013.  Because of their lack of legal immigration
status, counsel did not file complaint on their behalf.  They, however, remain available to join this case later.

110.     Plaintiffs and the class incorporate the preceding paragraphs as if the same were fully set forth herein.

111.     At all times relevant herein, Defendant Direct Import was an employer under the FLSA, 29 U.S.C. §203 and was an enterprise engaged in commerce or in the production of goods for commerce under the FLSA, 29 U.S.C. §203.

112.     At all times relevant herein, Plaintiffs and the class were employees under the FLSA, 29 U.S.C. §203.

113.     The FLSA requires covered employees to be compensated at least by minimum wage for every hour worked in the workweek.  Moreover, it requires covered employees receive overtime compensation "not less than one and one-half times" the employee's regular rate of pay for all hours worked over 40 in the workweek. 29 U.S.C. §§ 206(b), 207(a).

114.     Defendant Company violated the FLSA by refusing to pay Plaintiffs and the class members the statutory minimum wage.  Defendant Company also violated the FLSA by refusing to pay Plaintiffs and the class overtime wages.

115.     Defendant Company and Defendant Owners refused to pay Plaintiff Sardisco minimum wage throughout the entirety of Plaintiff Sardisco's employment in 2011 and 2012, and refused to pay any overtime compensations to Plaintiff Sardisco before April 2013.

116.     Defendants' violation was willful and with reckless disregard of clearly mandated FLSA requirements. 29 U.S.C. § 255.

117.     As a result of Defendants' willful violation, Plaintiffs and similarly-situated employees have been damaged in that they have not received all of the wages due to them pursuant to the FLSA.

## COUNT TWO: RECORD-KEEPING VIOLATIONS OF THE FLSA

### (For Plaintiffs and Class Members)

118.     All previous paragraphs are incorporated as though fully set forth herein.

119.     The FLSA requires employers to maintain and preserve payroll or other records containing, among other things, the hours worked each workday and the total hours worked each workweek. *See* 29 U.S.C. § 516.2 *et seq.*

120.     Defendant Company is a covered employer required to comply with the FLSA's mandates.

121.     During all relevant times, Plaintiffs and Class Members were covered employees entitled to the FLSA's protections.

122.     Defendant Company violated the FLSA with respect to Plaintiffs and the class members by failing to maintain accurate records of the actual hours Plaintiffs and the class members worked each workday and within each workweek.

123.     In violating the FLSA, Defendant Company acted willfully and with reckless disregard of clearly applicable FLSA provisions.

## COUNT THREE ---- FRAUDULENT INDUCEMENT

### (For Plaintiff Sardisco Only)

124.     All previous paragraphs are incorporated as though fully set forth herein.

125.     Defendant Company and Defendant Owners intentionally misrepresented to Plaintiff Sardisco that Defendant Company would pay Plaintiff Sardisco $1,400 per month for 40 hours a week as a full time employee.

126.     Defendant Company and Defendant Owners also intentionally misrepresented that they would provide Plaintiff Sardisco with free quality housing and increase of pay.

127.     Instead, Plaintiff Sardisco continually worked hours well in excess of 40 hours per week, did not receive agreed wage nor any additional compensation for hours in excess of 40 hours per week, and didn't receive quality housing.

128.     Plaintiff Sardisco's living conditions were downright inhuman.  A two bedroom small house was occupied by at least six workers.  Moreover, the house was infested with bed bugs, the gutters were damaged by trees, and the porch was falling.  The condition of the home was extremely poor.

129.     Moreover, Plaintiff Sardisco was the one who was forced to maintain the house, in addition to his normal job duties.  He was forced to clean the house and remove the dirt on the floor.

130.      Defendant Company and Defendant Owners knew that the representations they made were false, and made with intent to induce Plaintiff Sardisco's service to Defendant Company.

131.     Plaintiff Sardisco justifiably relied on Defendant Owners' representations, forwent other job opportunities, and worked for Defendant Company.

132.     In reliance on Defendant Owners' promises, Plaintiff Sardisco moved from Chicago to Cleveland and lived in Cleveland for nearly three years, making below minimum wage for the most of the time, working extremely long hours, living in a truly

disgusting and uninhabitable house, and being forced to clean up the property, beyond his normal 60-80 hour workweeks, without any additional compensation.

133.　Plaintiff Sardisco was unable to leave during this period because he did not make enough money to leave, to rent his own place, or to take the time and money necessary to seek a better job. He was bouncing from injuries and workplace abuses to recoveries and was literally caged in the miserable conditions imposed by Defendants Owners for the past three years.

134.　Defendant Owners' knowing and intentional misrepresentations, upon which Plaintiff Sardisco justifiably relied, constituted egregious fraud.

135.　Defendant Owners purposefully made numerous fraudulent misrepresentations to induce Plaintiff Sardisco to continue working for them, and avoided their contractual duties and continued their exploitation of Plaintiff Sardisco.

136.　As a direct and proximate result of Defendant Owners' fraud, Plaintiff Sardisco suffered damages in terms of the lost wages (for both regular and overtime work), workplace injuries, and other damages to be determined at trial.

COUNT FOUR- FRAUD

(For Plaintiff Sardisco Only)

137.　All previous paragraphs are incorporated as though fully set forth herein.

138.　In the course and scope of his employment as an installer or a general labor with Defendant Company, Plaintiff Sardisco was required to do all duties associated with his employment.

139.     In its relentless pursuit of profit at the expense of its workers, Defendant Company created an unsafe work environment, which led to injuries by many workers, including Plaintiff Sardisco.

140.     As a direct and proximate result of this employment, Plaintiff Sardisco sustained numerous injuries, including injury to his thumb, index finger, hand, leg, back, and tailbone in 2012 and 2013.

141.     Plaintiff Sardisco also suffered injuries and abuse as a result of the actions of Defendant Huang, working in his capacity as an employee and agent of Defendants Owners and Company.

142.     Defendant Company, as an employer, owed a duty of care, good faith, and fair dealing to Plaintiff Sardisco, as an injured worker and employee of Defendant Company.

143.     When Plaintiff Sardisco first injured his thumb, so severely that it needed to be sewn back on immediately, he was informed by Defendant Company and Owners that Defendant Company would not cover Plaintiff Sardisco's medical expenses because Defendant Company had no insurance.

144.     Therefore, Plaintiff Sardisco believed that he could not receive compensation or proper treatment for his injuries. Since he could not afford the treatment, he did not seek the proper medical attention for this injury.

145.     Defendant Company refused to cover his medical bills, for such on-the-job injuries.

146.     Upon information and belief, Defendant Company was covered under the Ohio Workers' Compensation Act.

147.     Defendant Owners, however, intentionally lied to Plaintiff Sardisco, so Plaintiff

Sardisco would not seek treatment and compensation, which would thereby expose

Defendant Owners' fraud on U.S. government, from their practice of hiring workers

without withholding and tax obligations.

148.     Such misrepresentations by Defendant Owners constituted fraud.

149.     As a result of such fraud, Plaintiff Sardisco suffered damages, including chronic

pain, loss of use of certain body parts, arthritis, in an amount to be determined at trial.

COUNT FIVE – PIERCE THE CORPORATE VEIL
– DEFENDANT OWNERS ARE PERSONALLY LIABLE

150.     All previous paragraphs are incorporated as though fully set forth herein.

151.     Upon information and belief, at all times relevant herein, Defendants Ni, Ling

Ling Ni, Eric Cheung, and Fannie Chen were the owners of Defendant Direct Import and

exercised control of Direct Import to such a degree that Direct Import had no separate

mind, will, or existence of its own.

152.     At all times relevant herein, Defendant Direct Import has been a legal fiction and

the alter ego of Defendants Owners.

153.     At all times relevant herein, Defendants Owners exercised such control over

Defendant Direct Import so as to commit illegal acts against Plaintiffs by attempting to

use Defendant Company to shield themselves from liabilities arising from their conduct,

including the actions alleged in this Complaint.

154.     Defendants Owners paid Plaintiffs and Class Members cash from their own

pockets, in order to evade federal and local taxes.

155.     Defendants Owners had such control and used this control to commit wrongs and perpetrate frauds and violations of statutory or other positive legal duties including failure to comply with the FLSA, violation of U.S. immigration law, and violations of various other federal and state laws, as alleged in this Complaint.

156.     As a direct and proximate result of the control and dominion exercised by Defendants Owners over Defendant Company, Plaintiffs and Class Members have suffered damages and unjust losses.

157.     Defendants Eddie Ni, Ling Ling Ni, Eric Cheung, and Fannie Chen are personally liable to Plaintiffs and Class Members for the aforementioned wrongful acts.

<u>COUNT FIVE- ASSAULT AND BATTERY</u>

(For Plaintiff Sardisco Only)

158.     All previous paragraphs are incorporated as though fully set forth herein.

159.     On numerous occasions throughout the duration of Plaintiff Sardisco's employment with Defendant Company, Defendant Huang willfully, wantonly and maliciously, without provocation or privilege, beat and assaulted Plaintiff Sardisco.

160.     Defendant Huang was acting within the course and scope of his employment and/or agency with Defendants Company and Owners.

161.     To deter the beatings from Defendant Huang, Plaintiff Sardisco had to wear/hide metal inside his clothing as armor so that, when Huang hit Plaintiff Sardisco, Huang would feel the hardness of the metal and hopefully stop the beatings.  This proved to be of no avail.  The severity and duration of the abuse was beyond description.

162.     As a direct and proximate result of the assault by Defendant Huang, Plaintiff Sardisco suffered personal injuries, both mental and physical, incurred lost wages,

incurred medical bills, pain and suffering, loss of enjoyment of life, and with reasonable certainty, will incur losses in the future because some of Plaintiff Sardisco's injuries to his body and his mental state are permanent in nature.

## COUNT SIX – NEGLIGENT SUPERVISION

### (For Plaintiff Sardisco Only)

163.     All previous paragraphs are incorporated as though fully set forth herein.

164.     Defendant Owners and Defendant Company failed to properly supervise their employees, resulting in Defendant Huang acting out of control and assaulting Plaintiff Sardisco, and proximately caused the injury and damages aforementioned.

165.     Defendant Owners and Defendant Company knew that Defendant Huang had a known propensity and history for violence and a volatile temper.

166.     Defendant Owners and Defendant Company were aware of the abuse Plaintiff Sardisco was continually suffering at the hands of his foreman, Defendant Huang, but chose to do nothing.

167.     After customers' complaints regarding Defendant Huang's violent behavior towards Plaintiff Sardisco, Defendant Owners and Defendant Company still took no steps to correct Huang's behavior or to protect Plaintiff Sardisco.  Defendant Eric expressly told Plaintiff Sardisco that Defendant Company would not fire Defendant Huang.

168.     Defendant Huang continued to harm Plaintiff Sardisco without any repercussions from Defendant Owners and Defendant Company.  Defendant Owners, instead of laying off Defendant Huang, laid off Plaintiff Sardisco in the end of October 2013 because of his complaints.

169.     Defendant Owners' conduct demonstrated a conscious disregard of Plaintiff

Sardisco's rights and safety; they knew that leaving Defendant Huang to work with

Plaintiff Sardisco would result in substantial harm, yet still continued to do so.

170.     As a result of Defendant Owners' negligent supervision, Plaintiff Sardisco has

suffered injury and damages, an amount to be determined at trial.

## COUNT SEVEN – NEGLIGENT HIRING AND TRAINING

### (For Plaintiff Sardisco Only)

171.     All previous paragraphs are incorporated as though fully set forth herein.

172.     Defendants Owners and Company failed to properly screen their employees for

hire and therefore negligently hired a person or persons who were not fit to perform the

sensitive job of foreman.

173.     Defendants Owners and Company knew that Defendant Huang had a known

propensity for violence and a volatile temper.

174.     The conduct of Defendant Owners and Company demonstrated a conscious

disregard for Plaintiff Sardisco's rights and safety, and they knew that leaving Defendant

Huang to work with Plaintiff Sardisco would result in substantial harm to Plaintiff

Sardisco.

175.     The negligent hiring practices and lack of employee training by Defendants

Owners and Company, resulting in Defendant Huang acting out of control and assaulting

Plaintiff Sardisco for a prolong period, proximately caused the injury and damages

aforementioned.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs seeks the following relief for themselves and all others similarly situated for Counts One and Two of the Complaint:

A. An order permitting this litigation to proceed as a collective action;

B. Prompt issuance of Notice pursuant to 29 U.S.C. §216(b) to all similarly situated members;

C. Designation of Plaintiff Sardisco and Plaintiff Chen as Representatives of the Collective Plaintiffs;

D. Actual damages for unpaid minimum wage and overtime compensation;

E. Liquidated damages to the fullest extent permitted under law;

F. Costs, disbursements, and reasonable attorney fees to the fullest extent permitted under law;

G. Prejudgment and post-judgment interest as provided by law;

H. Such other and further relief as this Court deems just and proper.

**IN ADDITION**, Plaintiff Sardisco seeks the following relief for himself only:

A. For Count Three and Four of the Complaint, an award of punitive damages of One Million Dollars ($1,000,000.00) against Defendants Eddie Ni, Ling Ling Ni, Eric Cheung, Fannie Chen;

B. For Count Five of the Complaint, for an order piercing the corporate veil of Defendant Company and finding Defendants Eddie Ni, Ling Ling Ni, Eric Cheung, and Fannie Chen personally liable for the damages outlined above against Defendant Company in Counts One through Eight;

C. For Counts Six, Seven, and Eight of the Complaint, judgment against Defendants Eddie Ni, Ling Ling Ni, Eric Cheung, Fannie Chen, Defendant Direct Import, and Defendant

Cheng Long Huang jointly and severally, in an amount of One Million Dollars ($1,000,000.00) for compensatory damages and punitive damages, plus pre-judgment interest and judgment interest as provided by law, Plaintiff's attorney fees and costs expended herein, and all other remedies available at law or in equity.

D. Such other and further relief as this Court deems just and proper.

<u>JURY DEMAND</u>

Plaintiffs herby demand a trial by jury on all issues that can be tried by a jury.

Respectfully submitted,

/s/ Lei Jiang_____
Lei Jiang (0084847)
Lei Jiang LLC
26943 Westwood Rd.,
Westlake, OH   44145
(440)835-2271
ljiang@leijianglaw.com
Attorney for Plaintiffs

**<u>CERTIFICATE OF SERVICE</u>**

A copy of the foregoing Plaintiffs' Amended Complaint has been forwarded to all parties via the Court's electronic filing system on this April 24, 2014.

/s/ Lei Jiang, Esq.___
Attorney for Plaintiffs